UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically filed*

| | |
|---|---|
| ANTHONY L. SMITH<br>    Plaintiff<br><br>v.<br><br>DANIEL CAMERON, et al.<br>    Defendants | Civil Action No. 3:20-CV-00748-CHB |

**DEFENDANT ATTORNEY GENERAL DANIEL CAMERON'S
MOTION TO DISMISS**

Under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Attorney General Daniel Cameron, in his individual and official capacities, moves the Court to dismiss the Plaintiff's Complaint. [DN 6]. In support of his motion, the Defendant states as follows:

**INTRODUCTION**

The Plaintiff, Anthony L. Smith, filed this *pro se* lawsuit in November 2020 against the Attorney General, the Commissioner of the Department for Income Support, and the Jefferson County Attorney, asserting numerous claims based on what he alleges was an unlawful deprivation of his first federal COVID-19 stimulus payment.

Yet, as to Attorney General Daniel Cameron, the Plaintiff has not alleged a single fact in his Complaint that might give rise to liability under § 1983. In fact, the

1

Plaintiff has hardly alleged any facts at all. The Plaintiff's claims against Attorney General Daniel Cameron, in both his individual and official capacity, must be dismissed.

## BACKGROUND

In 2001, while in prison, Plaintiff Anthony L. Smith submitted to a DNA test to establish his paternity to two children. *See* DN 6 at PageID# 36. The test confirmed that the Plaintiff was the biological father of the two children, then aged 13 and 6. *See id*. After his release in 2002, the Plaintiff agreed to pay $80 per week toward his children's child support. *See id*. In 2003, the Plaintiff was arrested and later convicted of robbery in Indiana and sentenced to serve 20 years in prison. *See id*. After serving more than ten years of his sentence, the Plaintiff was again released from prison in 2014. *See id*. In January 2016, the Jefferson County Family Court ordered the Plaintiff to pay his child support arrearage, which by then had grown to more than $70,000.00. *See id*.

In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). *See* Pub. L. 116-136, 134 Stat. 281 (March 27, 2020). Section 2201(a) of the CARES Act added section 6428 to the Internal Revenue Code, creating a refundable tax credit for individuals. This new section provides an eligible individual a refundable tax credit of up to $1,200 (or $2,400 for those filing a joint tax return), plus $500 per qualifying child. The advance payment of this "2020 recovery rebate for individuals" has been called the first round of economic impact payments (EIPs), or stimulus checks, issued to Americans by the federal government. The first round of EIPs was distributed in the fall of 2020. Unlike later EIPs, the first round

of EIPs were not exempt from garnishment by debt collectors. *See, e.g.*, Pub. L. 116-260, H.R. 133 § 272 (amending rebate provisions of the CARES Act to prevent garnishment or offset of EIPs). Like many other Americans, the Plaintiff was eligible to receive the first round of EIPs. *See* DN 6 at PageID# 36.

On or around October 24, 2020, the Plaintiff learned that the U.S. Department of the Treasury, Bureau of the Fiscal Service "applied all or part of [his] payment to delinquent debt that [he] owe[s]." *See id.* at PageID# 37. According to the notice he received from the U.S. Department of the Treasury, the Plaintiff's EIP was applied to his debt to "CHFS, DEPARTMENT FOR INCOME SUPPORT, CHILD ENFORCEMENT[.]" *See id.* Additionally, according to the Plaintiff, the U.S. Department of the Treasury's notice informed him that before sending his "debt to Fiscal Service, an agency must send notice to you at the address in its records. The notice explains the amount and type of debt you owe, the rights available to you, and the agency's intention to collect the debt by applying eligible federal payments made to you." *See id.* The Plaintiff alleges he did not receive such a notice. *See id.*

The Plaintiff also alleges that he complained to the Cabinet about the unlawful offset. *See id.* at PageID# 38. He alleges that he then sent an email complaint to the Ombudsman's office requesting an investigation. *See id.* The Plaintiff alleges he received a response by email from Tiffany M. Smith, a Citizen Assistance Specialist in the Office of the Ombudsman's Complaint Review Branch, informing him that he was notified on September 5, 2019, through an Advance Notice of Intent to Collect Past-Due Support (CS-122), that his child support debt was submitted to the Federal

3

Tax Refund Offset program. *See id*. Ms. Smith's response also indicated that "Child Support Enforcement was advised that additional letters did not need to be issued because delinquent payors had previously been notified of being reported to the Federal Tax Refund Offset program." *See id*.

Based on this sequence of events, the Plaintiff alleges that the Defendants violated 31 C.F.R. § 285.2(d)(1)(ii)(B) and (C). *See id*. at PageID# 34. Specifically, the Plaintiff alleges that "CHFS, Department for Income Support, Child Support Enforcement violated [his] right to due process and equal protection in the agency's failure to notify [him] or afford him the right to be heard in the offset of his EIP." *See id*. at PageID# 38.

The Plaintiff's recitation of the alleged facts does not mention Attorney General Daniel Cameron once.

## ARGUMENT

**I. The claims against Attorney General Daniel Cameron must be dismissed.**

Immunity bars each of the Plaintiff's claims against Attorney General Daniel Cameron. The Plaintiff's claims against Attorney General Daniel Cameron in his official capacity are barred by sovereign immunity. The Plaintiff's claims against Attorney General Daniel Cameron in his individual capacity are barred by qualified immunity. Finally, the Plaintiff's Complaint fails to state a claim upon which relief can be granted. Accordingly, the Court must dismiss all of the Plaintiff's claims against the Attorney General.

### A. Attorney General Daniel Cameron is entitled to sovereign immunity for the official capacity claims.

The Eleventh Amendment to the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Under the Eleventh Amendment, a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The Commonwealth of Kentucky has not waived its immunity, *Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and § 1983 has not abrogated state immunity because a state does not qualify as a "person" under the statute, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 62 (1989); *Long v. Kentucky*, No. 4:10-cv-00107-JMH, 2011 WL 321732, at *2 (W.D. Ky. Jan. 28, 2011) (collecting cases).

Section 1983 has two basic requirements: (1) the deprivation of federal statutory or constitutional rights by (2) a *person* acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48, (1988); *see also Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). "Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). A suit against an officer in his official capacity

is a suit against the entity for which he works. *See Graham*, 473 U.S. at 166 ("It is *not* a suit against the official personally, for the real party in interest is the entity.") (emphasis in original). Because the Plaintiff brings claims against the Attorney General in his official capacity, they really are claims against the Commonwealth of Kentucky, and therefore are barred by sovereign immunity.

As a general rule, a nonconsenting state may not be haled into federal court by one of its citizens. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) ("It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent") (internal citations omitted). Although there are exceptions to Eleventh Amendment immunity, *see, e.g., Ex Parte Young*, 209 U.S. 123, 156 (1908) (permitting federal courts to entertain claims against state officials for prospective injunctive relief to remedy an ongoing violation of federal law), none of those exceptions apply here. That is because the relief the Plaintiff seeks is not prospective, and the harm he alleges is not an ongoing violation of federal law.

To determine whether *Ex Parte Young* applies, the Court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003) (citations omitted). Here, the Plaintiff attempts to challenge past state action—the garnishment of his first EIP. And the relief he seeks is not prospective.

Here, the Plaintiff is not seeking prospective relief. He seeks only monetary damages for an alleged past harm. *See* DN 6 at PageID# 40 (seeking $88,000 in

compensatory damages and $888,000 in punitive damages). Nor is the harm he alleges an ongoing violation of federal law. It was a one-time garnishment of a refundable tax credit—an isolated event, not the result of ongoing action. The Plaintiff cannot satisfy the only applicable exception to the Eleventh Amendment.

The Plaintiff seeks monetary damages against the sovereign for a harm that allegedly occurred in the past. This he cannot do. Any claim under § 1983 against the Attorney General in his official capacity must be dismissed.

### B. The Plaintiff's Complaint fails to state a constitutional violation, entitling the Attorney General to qualified immunity.

In his "Statement of Claim," the Plaintiff does not mention Attorney General Daniel Cameron a single time. The Plaintiff makes no factual allegations that plausibly suggest that the Attorney General had anything to do with garnishing the Plaintiff's first EIP. This is fatal to the Plaintiff's claims against the Attorney General because plaintiffs bringing suit under § 1983 must allege that a public official was actively involved in the alleged misconduct. Under § 1983, "[e]ach defendant's liability must be assessed individually." *Kalvitz v. City of Cleveland*, 763 F. App'x 490, 495 (6th Cir. 2019) (quoting *Dorsey v. Barber*, 517 F.3d 389, 399 n.4 (6th Cir. 2008)). Failure to identify "with any degree of specificity" which "defendants were personally involved in or responsible for each of the alleged violations" requires dismissal of the complaint. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002). The Attorney General is entitled to dismissal.

Under Rule 12(b)(6), a claim may be dismissed for "failure to state a claim upon which relief can be granted." In reviewing a motion to dismiss, the court must

"construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014). Plaintiffs must allege facts in their complaint that make it plausible the defendant is liable for their injuries. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Conclusory restatements of law and "'naked assertion[s]' devoid of 'further factual enhancement'" will not do. *Id.* (quoting *Twombly*, 550 U.S. at 557). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements[.]" *Twombly*, 550 U.S. at 555. The court, however, "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (quoting *Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009)). The Plaintiff's Complaint fails to meet this standard.

Because the Plaintiff's Complaint fails to state a claim against the Attorney General or allege any facts which plausibly suggest the Attorney General's involvement in the Plaintiff's alleged injury, the Attorney General is also entitled to the defense of qualified immunity.

The defense of qualified immunity "shields government officials from 'liability

for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To resolve qualified immunity claims, courts ask whether: (1) the facts, viewed in the light most favorable to the plaintiff, show a violation of a constitutional right; and (2) the right at issue was "clearly established" at the time of the alleged misconduct. *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Both inquiries must be resolved in Plaintiff's favor for the claim to proceed. The Plaintiff's claims against the Attorney General fail on both fronts. At the Rule 12 stage, this reality entitles the Attorney General to the absolute defense of qualified immunity and dismissal as a matter of law.

The Complaint does not allege any facts that plausibly establish that Attorney General Daniel Cameron violated the Plaintiff's constitutional rights. The Plaintiff alleges that the Attorney General is the "designee of the CHFS in matters involving the collection and disbursement of child support arrears owed by debtors to the state or custodial parents and is intimately involved in the construction and implementation of guidelines and regulations surrounding the collection and disbursement of child support payments from debtors to custodial parents and the state." *See* DN 6 at PageID# 39. He does so without citation to a single statute to plausibly support his conclusory legal assertions, perhaps because the relevant statutes betray his assertions that the Attorney General had any role to play in

9

causing his alleged damages. *See, e.g.*, Ky. Rev. Stat. §§ 205.712 (requiring the Cabinet for Health and Family Services to collect and enforce child support obligations); 403.211 (allowing the parent, custodian, or agency substantially contributing to the support of a child to bring an action to establish or enforce child support); 405.470 (authorizing the Cabinet for Health and Family Services to collect delinquent child support by issuing an order to withhold and deliver earnings); *see also* 921 Ky. Admin. Reg. 1:410 (establishing the administrative procedures for child support collection and enforcement).

The Plaintiff also alleges, without factual support, that Attorney General Cameron "knew or should've known that Smith owed child support arrears . . . and that CHFS intended to treat Smith's EIP as a tax refund for purposes of offset[.]" *See* DN 6 at PageID# 39. But this is not a factual allegation; it is speculation. Moreover, it is not plausible. And it would be implausible for this Court to infer that the Attorney General knew that the Plaintiff, specifically, owed child support arrears, let alone that another state agency intended to take a particular type of action against him. *See Iqbal*, 556 U.S. at 679 (directing courts to "draw on [their] judicial experience and common sense" when evaluating the sufficiency of a plaintiff's allegations). The Attorney General's error, according to the Plaintiff, was that he "failed to direct the CHFS to properly notify Smith of its intention to offset Smith's EIP[.]" *See* DN 6 at PageID# 39. But the Attorney General lacks any legal authority to direct the Cabinet to do anything, and the Complaint does not provide any details about how the Attorney General might have done so.

10

Similarly, in support of his equal protection claim, the Plaintiff alleges that Attorney General Cameron "singled Smith out of all Americans eligible for the EIP and used Smith's status as 'a debtor in child support arrears' to offset Smith's EIP, whereas all other eligible Americans received their EIP[.]" *See id.* at PageID# 39–40. The Plaintiff provides no factual support for his assertion that he is the only American who did not receive his EIP because of something the Attorney General allegedly did. But again, it would be implausible for this Court to infer that the Attorney General took such action—singling out one Kentuckian out of "all Americans." *See Iqbal*, 556 U.S. at 679.

In a complaint, facts matter. Every plaintiff must allege facts in his complaint making it plausible that each individual defendant is liable for the plaintiff's injuries. *See Twombly*, 550 U.S. at 570. The Attorney General has been sued in this suit only because of his position as the head of the Department of Law. Nothing in the Complaint suggests otherwise. True, the Attorney General is the "chief law officer of the Commonwealth" and is charged with the responsibility to "exercise all common law duties and authority pertaining to the office of the Attorney General under the common law, except when modified by statutory enactment." Ky. Rev. Stat. § 15.020. But although the Attorney General serves as the Commonwealth's chief law officer, *id.*, and chief prosecutor, Ky. Rev. Stat. § 15.700, the Attorney General does not have unlimited, general prosecutorial authority under Kentucky law. *See St. Clair v. Commonwealth*, 140 S.W.3d 510, 531 (Ky. 2004) (explaining relationship of the Attorney General to local prosecutors and collecting statutes discussing the Attorney General's prosecutorial authority). The Attorney General has no role in child support

11

matters, whether as a prosecutor or a debt collector. Those functions are entrusted by statute to the Cabinet and to County Attorneys in Kentucky. *See, e.g.*, Ky. Rev. Stat. §§ 205.712 (requiring the Cabinet for Health and Family Services to collect and enforce child support obligations and authorizing county attorneys to enforce and collect child support obligations on behalf of the Cabinet); 405.470 (authorizing the Cabinet for Health and Family Services to collect delinquent child support by issuing an order to withhold and deliver earnings).

And the Attorney General lacks any supervisory authority over those agencies. The Plaintiff's assertions are mere conclusory allegations "devoid of further factual enhancement." The Plaintiff has not alleged a plausible due process or equal protection violation against the Attorney General.

The Plaintiff cannot establish that the Attorney General violated any of his constitutional rights, and he cannot establish that the Attorney General violated any clearly established rights. To overcome the Attorney General's claim of immunity, the Plaintiff must do the impossible—find controlling precedent which would require a constitutional officer, with no independent prosecutorial authority or oversight responsibility, to intervene in another agency's actions. While it is unlikely that such precedent exists, it is the Plaintiff's burden to direct the Court's attention to it. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (holding that unlike most affirmative defenses, the plaintiff "bears the burden" of defeating qualified immunity).

The Plaintiff's Complaint fails to state any plausible facts on which relief could be granted. The Attorney General is entitled to the absolute defense of qualified immunity and to an order of dismissal.

## II. The Plaintiff's Complaint fails to state a claim upon which relief can be granted.

The Plaintiff alleges that the Defendants violated 31 C.F.R. § 285.2(d)(1)(ii)(B) and (C). *See id.* at PageID# 34. But that federal regulation is inapplicable here. Section 285.2 relates to garnishments by federal agencies. The Cabinet for Health and Family Services is a state agency. *See* Ky. Rev. Stat. § 12.020(II)(8). To the extent the Plaintiff's injury is premised on violation of the federal regulation cited in his Complaint, he has not stated a claim for relief.

Instead, any action taken by the Cabinet for Health and Family Services is more appropriately analyzed under 31 C.F.R. § 285.3, which authorizes state agencies to offset tax refund payments to collect past-due child support obligations. Because the EIP at issue was a refundable tax credit paid before filing an annual tax return for the 2020 calendar year, *see* "2020 Recovery Rebate Credit," *available at* https://www.irs.gov/newsroom/recovery-rebate-credit (last accessed May 4, 2021), the Cabinet for Health and Family Services was authorized under federal law to garnish the Plaintiff's first stimulus payment based on his pre-existing child support debt. *See* "Frequently Asked Questions on the Treasury Offset Program (TOP), Economic Impact Payments, and the Recovery Rebate Credit," *available at* https://fiscal.treasury.gov/top/faqs-for-the-public-covid-19.html (last accessed May 4,

13

2021). Congress prevented garnishment of subsequent EIPs. *See, e.g.*, Pub. L. 116-260, H.R. 133 §§ 272, 273 (authorizing the second round of EIPs).

Because the Plaintiff's first EIP was subject to offset to satisfy his child support arrearage, he had no legitimate claim of entitlement to receive it. "The text of the Fourteenth Amendment's Due Process Clause makes clear that the state need not afford due process every time it takes an action that impacts negatively on citizens' lives. The amendment makes a narrower guarantee: 'No State shall . . . deprive any person of life, liberty, or property, without due process of law.'" *Golden v. City of Columbus*, 404 F.3d 950, 955 (6th Cir. 2005) (quoting U.S. Const. amend. XIV). To sustain a due process claim, the Plaintiff must allege: "(1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process." *Fields v. Henry Cty., Tenn.*, 701 F.3d 180, 185 (6th Cir. 2012). The Plaintiff fails this test.

He has not satisfied even the first element. To state a due process claim, the Petitioner must allege deprivation of a recognized property interest. "Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). A person's interest in a benefit is a due process property interest only "if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may

14

invoke at a hearing." *Gregory v. Hunt*, 24 F.3d 781, 784 (6th Cir. 1994) (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)). Legitimate claims of entitlement stem from two sources: "state statutes and contracts, express or implied, between the complaining citizen and the state or one of its agencies." *Golden*, 404 F.3d at 955. Only after a plaintiff identifies a protected property interest can the court "consider the form and nature of the process that is due." *Ferencz v. Hairston*, 119 F.3d 1244, 1247 (6th Cir. 1997) (citing *Roth*, 408 U.S. at 570–71). "Absent a protected property interest, a plaintiff cannot assert a due process violation." *Willie McCormick & Assocs., Inc. v. City of Detroit*, 61 F. App'x 953, 955 (6th Cir. 2003). Because the Plaintiff cannot demonstrate a legitimate claim of entitlement to his first EIP— because it was subject to garnishment under federal law—he fails to state a due process claim.[1]

Second, construed in the light most favorable to the Plaintiff, the Plaintiff alleges that he was denied equal protection of the laws because only his EIP was seized. Plaintiff fails to allege the most basic facts necessary for a cognizable equal protection claim. And even if he did, none of his factual allegations relate to conduct perpetrated by the Attorney General.

First, the Plaintiff's Complaint fails to identify a fundamental right being burdened by governmental discrimination. There is no such right or burden. The Plaintiff's apparent belief that he has a constitutional or fundamental right to receive refundable tax credits is misplaced; such a right is non-existent. Second, the Plaintiff

---

[1] Even if the appropriate state agency did not provide the requisite notice, the Plaintiff's Complaint is void of any plausible explanation of how that failure is attributable to the Attorney General.

15

fails to allege the most basic elements of a viable equal protection claim. "[T]he Equal Protection Clause 'prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.'" *Franks v. Rubitschun*, 312 F. App'x 764, 765 (6th Cir. 2009) (quoting *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005)). The Equal Protection Clause is concerned with arbitrary government classification. *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008). "[E]qual protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.'" *Engquist*, 553 U.S. at 601 (citing *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)); *see, e.g., Ross v. Moffitt*, 417 U.S. 600, 609 (1974) ("'Equal protection' . . . emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable"); *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 60 (1973) (Stewart, J., concurring) ("[T]he basic concern of the Equal Protection Clause is with state legislation whose purpose or effect is to create discrete and objectively identifiable classes"). Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an "identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

For these reasons, the first step in alleging an equal protection claim is identifying the classification or group to which Plaintiff belongs, whether it is a suspect class or an identifiable class. Plaintiff does not allege or identify the class or

16

group to which he belongs. He cannot do so because no classification or grouping is at issue. For this reason alone, Plaintiff's equal protection claim fails.

In limited scenarios, though, a plaintiff can allege a cognizable equal protection claim under a class-of-one theory. To do so, a plaintiff must allege that he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citing *Sioux City Bridge Co. v. Dakota Cty.*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Comm'n of Webster Cty.*, 488 U.S. 336 (1989)). Plaintiff's complaint does not allege *any* facts to support a cognizable class-of-one equal protection complaint. Plaintiff failed to plead facts identifying others similarly situated. Plaintiff failed to plead intentional treatment different from others similarly situated. And he failed to plead that any difference in treatment lacked a rational basis. The Plaintiff fails to state an equal protection claim.

The Plaintiff's Complaint fails to state a claim upon which relief can be granted and must be dismissed in its entirety.

17

## **CONCLUSION**

The Court should grant Attorney General Daniel Cameron's motion under Rule 12(b)(1) and 12(b)(6) and dismiss all the Plaintiff's claims against him.

Respectfully submitted,

/s/ Heather L. Becker
Aaron J. Silletto (# 89305)
Heather L. Becker (# 94360)
Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Phone: (502) 696-5300
Aaron.Silletto@@ky.gov
Heather.Becker@ky.gov

*Counsel for Attorney General Daniel Cameron,
in his individual and official capacities*

## CERTIFICATE OF SERVICE

      I certify that on May 13, 2021, the above document was filed with the CM/ECF filing system, which electronically served a copy to all counsel of record and upon Plaintiff by electronic mail and U.S. Mail, postage prepaid at the following address:

Anthony L. Smith
2207 Farnsley Road
Louisville, Kentucky 40216

                                                      /s/ Heather L. Becker
                                                      *Counsel for Attorney General Daniel Cameron,*
                                                       *in his individual and official capacities*